Geaham, Judge,
delivered the opinion of the court:
This case involves a contract for pumps for sundry uses in connection with torpedo destroyer vessels being constructed at that time. The plaintiff was a large manufacturer of pumps, and had been furnishing pumps to the Navy Department for use on vessels since the year 1888. In fact, practically all the vessels constructed on the Pacific seaboard and some on the Atlantic seaboard had been supplied with pumps by the plaintiff, and had always given satisfaction.
The plaintiff constructed the pumps here in dispute; operating tests were conducted at the plaintiff’s plant when the pumps were completed, in the presence of naval inspectors. At these tests pumps were operated under steam pressure for *184 eight days, and oil cups containing oil were inserted in the holes drilled in the valve chests of the pumps’ steam cylinders, affording internal lubrication of the steam chests. These cups were prominently placed, and it was plain to anyone who could see and knew anything of pumps that they were being internally lubricated; and this must be held to have been evident to the naval inspectors, and that they knew internal lubrication was being used. There was no objection upon their part at the time.
On or before September 5th more than 79% of the pumps had been constructed and delivered, and the balance was in process of construction. During the last days of August, 1918, under the trial of the destroyer Ward, the pumps functioned properly without internal lubrication, due probably to the presence of the oil in the steam chests placed there at the time of shipment to prevent rust. When the sea tests were later made no internal lubrication was used, and as a result the pump valves stuck and the pumps failed to function properly. Thereafter, when the plaintiff’s engineer appeared for the purpose of investigating the trouble with the pumps, the plaintiff was told — and this was its first notice— that the pumps were to be operated without internal lubrication.
The one question, therefore, is, and there is but one question in the case, whether the plaintiff, under its contract, was required to construct these pumps so that they could be operated without internal lubrication. The contract did not in terms so provide. The defendant relies upon the following provision of the contract, which is the only one mentioning the use of oil:
“ Valve chests of pump steam cylinders will be drilled and tapped for small oil cups. Cups will not be fitted, but the holes will be plugged.”
The defendant contends that this was sufficient to give the plaintiff notice that the pumps were to be operated without internal lubrication. We do not think that this contention can be sustained when all the facts are considered. It is true that at the time these pumps were contracted for and manufactured there was a regulation in the Navy Depart *185 ment, known apparently to some of its officers, requiring pumps to be constructed so tbat they could be operated without internal lubrication. However, the plaintiff, as stated, had been making pumps for the Navy for many years prior to the making of this contract, and all the contracts contained this identical provision. It does not appear that the plaintiff had any knowledge of the regulation in the Navy Department, and it certainly was not required by its contract to comply with such a regulation. In fact, the whole difficulty could have been avoided by a small amount of ordinary care upon the part of the representatives of the Navy Department, by inserting such a provision in the contract, or notifying the plaintiff of the regulation before the pumps were constructed. The fact that this was not known to the plaintiff, and, it must be inferred, not known to the naval officers who were present at the tests, is shown by the fact that at the tests the pumps were operated by internal lubrication.
It is also evident from the facts that the plaintiff promptly took steps to make and did prepare a change in the pumps which would cause them to operate in the manner desired. It notified the defendant on the 30th of September, 1918, that the problem was being worked out, and it was worked out with the cooperation of the Bureau of Steam Engineering. The inspector of engineering material notified the bureau that the plaintiff had modified the chest pistons of the pumps, and that the tests had indicated that the pumps, with this modification, would fill the requirements, and that these changes had been authorized by the engineer office at Mare Island Navy Yard, and the inspector further notified the bureau on October 26th that “ all Dow pumps work perfectly in the shop.” Thereafter, on November 21, the plaintiff was notified that the defendant on its own account had made changes and supplied other steam ends, known as the Warren steam ends, the cost of which would be deducted, and was deducted, from the price agreed to be paid for these pumps under the contract.
The pumps were returned to the plaintiff, they were altered in accordance with the requirements of the defendant, returned to the defendant and used, and the additional *186 expense in making these alterations, together with the sum deducted, as just stated, by the defendant makes up the sum sought to be recovered by the plaintiff in this action.
It is too plain to require discussion that there was no implied warranty of these pumps to operate without internal lubrication. They were built as the plaintiff had always built pumps for the Navy under a provision that had been in previous contracts. The defendant had ordered specific pumps, and they were manufactured and supplied by the plaintiff in accordance with the contract and specifications. What was to be done with them was not a matter that concerned the plaintiff so long as the contract and specifications were complied with. It is very clear that the situation out of which this suit sprang was due to the fault of the Navy Department and not of the plaintiff.
The plaintiff is entitled to recover the sum of $75,15424, claimed in its petition, being the amount due for expenditures in altering the pumps and the sum withheld by the Government on account of cost of changes, and it is so ordered.
SiNNott, Judge; GeeeN, Judge; and Booth, Chief Justice, concur.
Moss, Judge, took no part in the decision of this case because of illness.